■ In the Matter of the Claim of MABEL GIBALSKI, Respondent, against ELMIRA COUNTRY CLUB et al., Appellants, and SPECIAL FUNDS CONSERVATION COMMITTEE, Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal by the employer and its carrier from a decision and award of the Workmen's Compensation Board granting death benefits to the widow and discharging the Special Disability Fund under subdivision 8 of section 15 of the Workmen's Compensation Law. The deceased employee had a long history of heart disease. In 1947 he had suffered a myocardial infarction due to a coronary thrombosis. At that time he was hospitalized and away from work for several months. Thereafter he took medication for his heart condition and was examined at various times. Electrocardiograms showed a previous myocardial damage in 1949, frequent ventricular premature contractions in 1952 and an enlarged heart and a healed myocardial infarction in 1954. Throughout this period he had complained of being tired and had shortness of breath. The decedent had various jobs in this period, some involving strenuous physical labor, and in the Summer of 1954 he went to work for the employer herein, the Elmira Country Club, where he worked on the maintenance crew of the golf course. In the Winter of 1954–1955 he worked as a delivery man and the following Spring he returned to his job at the Country Club. His work involved such things as top dressing the greens, fixing steps, picking up papers and watering greens. On May 6, 1955 while standing by a lawn mower the decedent fainted and he was thereafter absent from work for several days. He consulted a doctor on May 9, 1955 at which time an electrocardiogram again showed ventricular premature contractions at times leading to a bigeminal rhythm. On July 11, 1955 after lunch the decedent drove a truck, accompanied by one Claude Smith, to a fairway where some leaves had been raked into a row about 200 feet long, 18 inches high and 1 foot wide. Using a fork the decedent proceeded to pitch the leaves onto the truck. The decedent would occasionally get in and move the truck forward. Smith testified that the decedent pitched 50 to 60 forkfuls, weighing 10 to 12 pounds each, on the truck and that they then went to dump the leaves. They stopped for a drink and were back at the leaves again in 10 to 15 minutes. Then after pitching 10 to 12 more forkfuls, Smith saw the decedent start to collapse as he was pitching a forkful onto the truck. Smith caught him and he said, "Lay me down on the ground." He was breathing heavy and vomited. The ambulance arrived in about 10 minutes, and the driver thought he felt a pulse but the decedent was dead when the hospital was reached four minutes later. The death certificate stated that death was due to a coronary occlusion but no autopsy was performed. A claim for death benefits was filed by the widow on behalf of herself and three alleged dependents. Thereafter the carrier filed a claim for reimbursement from the Special Fund under subdivision 8 of section 15. The Referee disallowed the claim finding insufficient proof of accident and causal relation. On review the board reversed, finding that due to unusual strain and overexertion in his work the decedent was caused to suffer a coronary occlusion which caused his death. The Referee then disallowed the carrier's claim for reimbursement, found that the alleged dependents were not in fact dependents, and made an award to the widow alone. On the carrier's application the board would only review the question of reimbursement and it affirmed the Referee's decision. The appellants contend that the decedent did not sustain an industrial accident, that there is no evidence to support the finding of death due to coronary occlusion caused by strain nor any substantial evidence to support the finding of causal relationship and that the

Special Fund under subdivision 8 of section 15 should not have been relieved of liability. The respondent board maintains there is substantial evidence to support the finding of death due to an industrial accident and the respondent Special Fund argues that it was properly relieved of liability because of the employer's lack of knowledge of the decedent's condition. The board was presented with a conflict in the medical testimony. Three doctors testified for the claimant to the effect that his death was contributed to by his work. Two doctors testified for the carrier that the decedent died from a coronary thrombosis or occlusion which was in no way contributed to by his work. The essential question here appears to be whether or not the decedent's work at the time of his death required of him greater exertion than the ordinary wear and tear of life. It would appear from the decedent's work on the day of his death was somewhat unusual as regards his ordinary duties and, it would seem, more strenuous. The appellants rely on Matter of Burris v. Lewis (2 N Y 2d 323) to support their argument that there was no industrial accident here. The claimant's only medical witness there, testified that the decedent's heart had so deteriorated that any exertion would have been an overexertion. Here there is no question that the decedent had a serious heart disease especially in view of his collapse only a few weeks before his death at a time when he was doing nothing. However, the claimant's medical experts here did not testify that any exertion would have been too much but rather that the specific work in question was what constituted the overexertion. It would seem that the board could find that the work involved here entailed more exertion than the ordinary wear and tear of life. The decedent pitched 60–70 forkfuls of damp leaves, weighing 10–12 pounds each, onto a truck. Further this work was done in a fairly short period of time. The work was started after lunch at 12:30 P.M., death occurred at 1:45 P.M. and in between about 15 minutes was taken to dump a load of leaves. The next question to be considered is whether the Special Fund under subdivision 8 of section 15 was properly relieved of liability. The issue is knowledge by the employer of the decedent's permanent condition. The testimony on this question comes from one Richard Grill who was greens superintendent for the employer and thereby the decedent's foreman. He had come to work in August, 1954, a few months after the decedent. He stated that he noticed that the decedent was bothered by shortness of breath and he put him on light work. He knew that the decedent went to a doctor. The decedent never told him anything about his condition but he assumed he had heart trouble. The board found that the employer did not have knowledge of the pre-existing permanent physical impairment (cf. Matter of Robinson v. Mergenthaler Linotype Co., 3 A D 2d 611). The board was presented with a question of fact as to the knowledge of the employer and its determination was based on substantial evidence. Decision and award unanimously affirmed, with costs to the Workmen's Compensation Board and the Special Disability Fund. Present — Foster, P. J., Bergan, Coon, Gibson and Reynolds, JJ.